CITY OF OMAHA v. CITY OF SOUTH OMAHA.

[FILED FEBRUARY 17, 1891.]

1. **Cities: EXTENSION OF LIMITS.** Under section 3, chapter 12*a*,
   Compiled Statutes, a city of the metropolitan class may extend
   the corporate limits so as to include an area not to exceed twenty-
   five square miles, including any village organization within such
   limits, which organization will thereupon cease and terminate.
   Under these provisions the city must include the entire village
   and cannot divide the territory and annex only a portion thereof.

2. ———: ONE CANNOT ANNEX ANOTHER. The statute does not
   authorize a city of the metropolitan class to extend its limits
   over a city of the second class.

3. ———: ORGANIZATION: IRREGULARITIES. Where it is appar-
   ent that a city of the second class has in fact been duly organ-
   ized in good faith, mere irregularities in some of the proceedings
   will not render the organization void.

ORIGINAL application for injunction.

*A. J. Poppleton,* for plaintiff.

*J. C. Cowin,* and *J. W. Edgerton, contra.*

MAXWELL, J.

This is an original action brought in this court to enjoin the city of South Omaha and the treasurer thereof from collecting taxes upon certain real estate described in the petition, and from exercising any jurisdiction over said premises so described, because such exercise of jurisdiction is in excess of its corporate power.

The plaintiff alleges in its petition that "the city of Omaha is a city of the metropolitan class, duly incorporated and organized under an act of the legislature of the state of Nebraska entitled 'An act incorporating metropolitan cities, and defining, regulating, and prescribing their duties, powers, and government,' approved March 30, 1887, and also an act amendatory thereof passed and approved March 16, 1889,

"That the city of South Omaha is a city organized and existing under the laws of the state of Nebraska, providing for the organization of cities of the second class; that Thomas Hoctor is the treasurer and collector of the city of South Omaha, duly elected, commissioned, and qualified, and authorized to exercise the duties and powers of such officer within the limits of South Omaha.

"That the following described premises, claimed by the defendant, the city of South Omaha, to be situated within its boundaries and jurisdiction, are in truth and in fact situated within the boundaries and jurisdiction of the city of Omaha, plaintiff.

" That in assessment of the real estate situated within the boundaries and subject to the jurisdiction of the city of

Omaha for the city taxes of said city for the year 1890 said premises were wholly omitted from said tax list.

"That, subsequently, by order of the city council of the city of Omaha, given the city treasurer of the city of Omaha, by concurrent resolution of said city council, duly passed and approved by the mayor of said city, said treasurer of the city of Omaha was ordered and directed, in pursuance of the charter of said city of Omaha granting and conferring such power, and imposing such duty, to place upon the tax list of the city of Omaha for the year 1890 said premises, at a valuation corresponding to other real estate in the immediate vicinity of said premises, and to collect said taxes for the year 1890 as in other cases, and that in pursuance of such order and direction of the city council of the city of Omaha the treasurer of said city will cause said premises to be entered upon the city tax list for said year, and assess a tax in accordance with the direction of said city council.

"And plaintiff claims that said premises are subject to the jurisdiction of the city of Omaha, plaintiff, both for taxation and revenue and for judicial and executive purposes, and that notwithstanding said city of South Omaha claims jurisdiction over said premises, it is without such jurisdiction of any character whatever, and that the same is under the exclusive jurisdiction of the city of Omaha, plaintiff. The premises hereinbefore referred to are described at length and in detail as following—(describing property).

"That under and by virtue of section 3 of the act first hereinbefore referred to the plaintiff city was authorized and empowered by ordinance, within one year after the passage of said act or within one year after being proclaimed by the governor of the state of Nebraska a city of the metropolitan class, to include an area not to exceed twenty-five square miles, including any township or village organization within such limits, which organization should thereupon

cease and terminate, and that thereafter the said city should possess and exercise exclusive jurisdiction for all purposes over the said premises included in said twenty-five square miles.

"That in pursuance of said power and authority, and within the time limited thereby, the city of Omaha, plaintiff, did, by ordinance duly passed and approved, include within its boundaries (said boundaries not exceeding twenty-five square miles) the premises hereinbefore described, and that said premises were situated, at the time of the passage of said ordinance so extending said boundaries as aforesaid, within the limits of the township or village organization then existing and known as the city of South Omaha.

"That said ordinance was passed and approved on the 9th day of April, 1887, and that the organization of the city of South Omaha as a township or village was at that time in full and complete existence and was not terminated until December 13, 1887, by means whereof the said premises became on the said 9th day of April, 1887, and thenceforward have ever since continued to be, a part and parcel of said plaintiff city, included within its boundaries and wholly and exclusively subject to its jurisdiction, and that since said date said premises have not been and are not now subject to the jurisdiction either of the village or the city of South Omaha.

" That the city of South Omaha, defendant, claiming and pretending that said premises are subject to its jurisdiction for purposes of taxation and revenue and all other purposes, has caused the said premises to be assessed and valued for taxation and a levy made thereon for the taxes of said city of South Omaha for the year 1890; that the defendant has caused said taxes to be extended upon its tax list and by warrant, duly executed, the treasurer of said city has been directed to enforce and collect the same, and that unless restrained by this court the said treasurer will proceed to enforce the collection of the taxes so levied

by the authorities of said city of South Omaha upon said premises, by advertisement and sale of said premises for said taxes, if unpaid, and that the proceeds of such collections, by sale or otherwise, as said treasurer may be able to make, will pass into the treasury of the city of South Omaha, and the plaintiff city be deprived of the revenue to which it is entitled from said premises, and that to protect said premises against the enforcement of the tax so levied by the city of South Omaha will cause and require a vast amount of litigation and a multiplicity of suits, as such resistance can only be made by each owner individually by proceedings to enjoin the collection of said taxes.

"That in asserting jurisdiction over said premises, and causing such taxes to be assessed and levied, and in attempting to collect the same, the said city of South Omaha is proceeding in violation of and in excess of its corporate power and authority, to the injury and detriment of the said plaintiff city, and that if the said city of Omaha is compelled to resort to proceedings against each of the individual owners of portions of the premises in the controversy in this suit it will result in the institution and prosecution of a great number of proceedings for the enforcement and collection of such taxes as may be levied under the resolution of said city council and that said tax cannot be enforced so long as the individual owners of said premises resist the same, without the institution and prosecution of a multiplicity of suits, and that the said plaintiff city of Omaha has no adequate remedy at law, and no complete, adequate, effective, or speedy remedy for the grievances complained of except by a suit in equity instituted in the supreme court of the state for the purpose of protecting and preserving the revenue to which said plaintiff is entitled from said premises and enjoining and preventing the said city of South Omaha from collecting or attempting to collect and appropriate to its own use, in

violation and in excess of its corporate powers, the revenue derived from the taxation of said premises and which legitimately and equitably belongs to said premises and should be paid to said plaintiff, city of Omaha."

The substance of the answer is that at the time of the passage of the ordinance set out in the petition South Omaha was a city of the second class containing more than 1,000 and less than 25,000 inhabitants; second, that under section 3 of the act creating cities of the metropolitan class a portion of the territory of a village cannot be included within the limits of a city of that class, but the ordinance of annexation must include the entire village.

Sec. 3, chapter 12a, of Compiled Statutes, under which the rights claimed in the petition are asserted, provides that "The corporate limits of any city of the metropolitan class shall be fixed and determined by the mayor and council of such city, by ordinance, within one year after the passage of this act, or within one year after being proclaimed by the governor, a city of such class, the said corporation limits to include an area not to exceed twenty-five square miles, including any township or village organization within such limits, which organization shall thereupon cease and terminate, and after said corporate limits have been so fixed and determined, the same shall not be changed until the population of such city shall have increased at least twenty thousand, as shown by a state or national census, whereupon the mayor and council of any such city may extend said corporate limits such distance as may be deemed proper in any direction, not exceeding one mile."

The testimony in the case tends to show that on the 9th day of April, 1887, the ordinance set out in the petition, extending the boundaries of the city of Omaha over a portion of the territory of South Omaha, was passed and approved. On the 7th day of the same month South Omaha had organized as a city of the second class having more than 1,000 and less than 25,000 inhabitants. If this

organization was legal, then the present action must fail, because the power to extend the limits of a city of the metropolitan class does not authorize it to include a city of the second class.  In organizing South Omaha a city of the second class the proceedings seem to have been some-what irregular, and the records do not appear to have been kept as well as in an older community.  But sufficient appears to show that it was a valid organization as a city of the second class.  No census was taken before effecting the organization, but the testimony before us tends to show that the village had more than 1,000 inhabitants.  In a direct proceeding to annul the organization many facts might be proven which cannot be considered in a collateral attack on such organization.

To authorize the organization of a city of the second class it must contain not less than 1,000 inhabitants. This number is a condition precedent to the right to or-ganize, and if the proof fails to show such number the or-ganization would be subject to attack in this proceeding. It is evident, however, that South Omaha at the time mentioned contained not less than 1,000 inhabitants.  In addition to this, if the plaintiff intended to claim rights under the ordinance extending its limits, it should have proceeded within a reasonable time to do so.  Taxes were being levied and collected for various purposes in both cities, and the taxpayers in both were entitled to protection from conflicting tax claims.  In growing cities like the plaintiff and defendant, where streets are being graded and paved and public buildings erected, the boundaries of each municipality should be definitely known, and an unreason-able delay in asserting claims under an alleged extension thereof will be looked upon with disfavor by a court of equity.

Second—Sec. 3, chapter 12a, authorizes a city of the metropolitan class to include an area not to exceed twenty-five square miles, including any township or village organ-

ization within such limits, and provides that such "organization shall thereupon cease and terminate." It is probable that the word township is used in the sense of town, which the county board in certain contingencies is authorized to create. In other words, a town as used in the statute is a species of village government, and is distinguished from township government. But that question does not arise in this case, as South Omaha, prior to April 7, 1887, was a village created by the county commissioners of Douglas county. The statute required the city of Omaha, therefore, in extending its boundaries so as to include the village, to take in the entire village. Otherwise the annexation of a portion of the territory of the village might operate as a great hardship upon property owners and residents of that portion of the village not annexed to the city. On both grounds, therefore, the claims of the plaintiff must be denied. It is apparent that an injunction ought not to be granted. It is therefore denied and the action

DISMISSED.

THE other judges concur.